## UNITED STATES v. MULLIGAN.

(District Court, N. D. New York. September 25, 1920.)

1. **Searches and seizures ⬅➡7—Witnesses ⬅➡293—Lever Act license and inspection provisions not unconstitutional; "private papers."**

   Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛ʟ–3115⅛r), in providing for licensing of dealers in foods, feeds, fuel, etc., and for regulations requiring keeping of accounts and the inspection of business and records, does not violate Const. Amends. 4 and 5, forbidding unreasonable searches and seizures, and the compelling of one to be a witness against himself; the books and papers which the dealer is compelled to keep as a condition of doing business during the war not being "private papers" within the meaning of the Constitution, but records of a quasi public nature, the keeping of which is a condition of his doing business, by the acceptance of which condition he may be deemed to have waived the constitutional right which he would otherwise have.

   [Ed. Note.—For other definitions, see Words and Phrases, Second Series, Private Papers and Documents.]

2. **Indictment and information ⬅➡60—Test for sufficiency stated.**

   The sufficiency of an indictment is to be tested by ascertaining whether it contains every element of the offense intended to be charged and sufficiently apprises the defendant of what he must meet, and whether, in case other proceedings are taken against him for a similar offense, the record shows with accuracy to what extent he may plead a former acquittal or conviction.

3. **Indictment and information ⬅➡110(3)—In language of statute sufficient.**

   Where a statute fully, directly, and expressly, without any uncertainty or ambiguity, sets forth all the elements of an offense, an indictment is sufficient which charges the offense substantially in the language of the statute.

4. **War ⬅➡4—Indictment under Lever Act held sufficient.**

   An indictment under the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛ʟ–3115⅛r), which, after setting out the act and that accused was engaged in dealing in sugar, alleged that the government officers demanded an examination of his books, but that accused refused to give them any information, or to allow them to inspect his property, place of business, and records, and declared his books to be in the safe and did not take them out, was sufficient.

George E. Mulligan was indicted for violating the Lever Act. On demurrer to the indictment. Demurrer overruled.

Frank J. Cregg, Sp. Asst. Atty. Gen., for United States.

Borst & Smith, of Schenectady, N. Y. (John H. Gleason, of Albany, N. Y., of counsel), for defendant.

COOPER, District Judge. [1] This is a demurrer to an indictment containing two counts, charging the defendant with violating section 5 of the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛g). These two separate counts charge the same acts of violation, one on the 19th day of May, 1920, and the other on the 22d day of June, 1920. The acts constituting the violation as charged are that the defendant did unlawfully, knowingly, and willfully impede, resist, and interfere with duly authorized agents of the United States, and refused

to permit them to enter and inspect the places of business of the defendant, and did refuse to furnish any information whatever as to his manner of conducting his business, or the amount of business done, or the sugar handled, or to whom sold, or any information whatever, and did refuse to allow said agents to inspect his property, his place of business, or the records of his business, stating that he kept his records in a safe, locked up, and he did not produce them.

The statute (the Lever Act) provided that it was essential to the national security and defense, and for the successful prosecution of the war, to secure an adequate supply of foods, feeds, fuel, etc., and that for such purposes the President was authorized to require that persons dealing in such necessaries should be licensed and he was authorized to prescribe regulations for the issuance of the license and requirements for the keeping of accounts of the licensee, for the inspection of his place of business, property, etc., by federal agents. The President duly issued such proclamation and prescribed regulations, which are set forth in the indictment. The defendant took out the license, and it is for failure to permit the inspection of his business and records, and specifically in preventing the federal agents from making such inspection, pursuant to the instrumentalities created by the statute, that the defendant is indicted.

The defendant demurred to the indictment on the ground of its general insufficiency and failure to state facts sufficient to constitute a crime, and more particularly on the ground that the statute and the regulations violated the Fourth, Fifth, and Sixth Amendments to the Constitution. Not much stress is laid by defendant upon the Sixth Amendment, but great stress is laid upon the Fourth and Fifth Amendments, to the Constitution. The Fifth Amendment is that no person shall be compelled in any criminal case to be a witness against himself, and the Fourth Amendment provides that the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated.

It is not clear how the question of the Fifth Amendment is raised by this indictment and the demurrer thereto. The defendant has not been subpœnaed nor otherwise compelled to attend court; he has not been compelled to give oral testimony relating to himself or his conduct of the business; nor has be been compelled, or sought to be compelled, to produce in court any books or papers which might be incriminating evidence against himself. The cases cited by both sides in the brief are either criminal prosecutions against the defendant for violations of similar statutes, or contempt proceedings based upon a refusal of the defendant to produce or exhibit his books before the grand jury or upon trial. No such situation confronts the defendant here. He is indicted for failure to permit inspection of his business, property, and records and to give, out of court, information as to his business.

But, assuming that, if he were compelled to permit inspection of his books and records, and to give information, the evidence might be used against him in court, the question then arises: Does this statute and the proclamation and regulations thereunder, violate his constitutional rights

under Amendments Fourth and Fifth of the Constitution? He is not a corporation and the authorities distinguishing the rights of the corporation from the individual, do not directly apply. It may also be taken for granted that in the absence of the exercise of the war powers of the government as contained in the Lever Act, if he were sought to be compelled to produce his records in court, or to testify against himself, any statute compelling him so to do would be unconstitutional, and violative of the federal Constitution.

The final question then is: Are the books and papers which defendant is compelled to keep under the statute, as a condition of doing business during the war, necessarily private papers, within the meaning of the Constitution, or are they records of a quasi public nature, which he is compelled to keep as a condition of doing business, and by the acceptance of which condition, in legal effect, he may be deemed to have waived the constitutional right which he would otherwise have.

It has been held by the Circuit Court of Appeals in this circuit that the Lever Act is constitutional. That the government is technically in a state of war, and was in such state of war at the time set forth in the indictment, and will be until a treaty of peace has been duly entered into, has been held by highest authority. Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U. S. 160, 40 Sup. Ct. 106, 64 L. Ed. 194.

No federal decision has been cited by either side which is in close analogy to the case at bar; but there are various decisions of the highest courts of several states, where a similar regulative act was under consideration, and in which a similar state constitutional provision against compelling a person to be a witness against himself was in force. In those state decisions, of course, no war-time powers of the government were involved, but the decisions were based upon the right of the state to regulate the traffic, and to require the individual to comply with certain requirements as a condition of engaging in such traffic.

In State v. Donovan, 10 N. D. 203, 86 N. W. 709, the defendant was a druggist, who was required by statute to keep a record of all sales of intoxicating liquors made by him, which should be subject to public inspection at reasonable times. It was held that the privilege against self-incrimination was not available to him with respect to the books kept under the law, for they were—

"public documents, which the defendant was required to keep, not for his private uses, but for the benefit of the public, and for public inspection."

On similar grounds in State v. Davis, 108 Mo. 666, 18 S. W. 894, 32 Am. St. Rep. 640, the courts sustained a statute to preserve prescriptions compounded and to produce them in court when required.

The doctrine of these cases is referred to and approved by Mr. Justice Hughes in deciding the case of Wilson v. United States, 221 U. S. 381–382, 31 Sup. Ct. 544, 545, 55 L. Ed. 771, Ann. Cas. 1912D, 558, in which he cites various other state decisions along the same line from West Virginia, Kentucky, Iowa, Michigan, Illinois, and South Carolina, and also cites an English case arising under a statute requiring the keeping of vestry books. Mr. Justice Hughes' interpretation of these decisions is given in the following language:

"The fundamental ground of decision in this class of cases is that where, by virtue of their character and the rules of law applicable to them, the books and papers are held subject to examination by the demanding authority, the custodian has no privilege to refuse production although their contents tend to criminate him. In assuming their custody he has accepted the incident obligation to permit inspection."

In another place (221 U. S. page 380, 31 Sup. Ct. 544, 55 L. Ed. 771, Ann. Cas. 1912D, 558) in the opinion in the Wilson Case, Mr. Justice Hughes says the principle applies, not only to public documents and public officers, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulations and the enforcement of restrictions validly established. There the privilege which exists as to private papers cannot be maintained.

There are other cases which seem to uphold this doctrine in other states, in all of which there is a constitutional provision against self-incrimination, like Amendment 5 of the Constitution. In St. Joseph v. Levin, 128 Mo. 588, 31 S. W. 101, 49 Am. St. Rep. 577, it was held that a city ordinance requiring every pawnbroker to enter in a book a description of the property left with him in pawn, and of the person leaving it, is valid.

It had been held in People v. Schneider, 139 Mich. 673, 103 N. W. 172, 69 L. R. A. 345, 5 Ann. Cas. 790, that a city ordinance regulating the speed of automobiles and providing a punishment for violation thereof, and requiring each automobile operating in the city to carry a registration number, was not in violation of Const. art. 6, § 2, declaring that no person shall be compelled in a criminal case to be a witness against himself, or be deprived of his liberty or property without due process of law. The court said that it was clear the ordinance does not compel an automobile owner or operator to testify against himself, or deprive him of his property rights, and that the statute was merely a justifiable exercise of the police power, in the interest of the safety of the driving public.

On the question of the constitutionality of chapter 189, p. 307, Laws 1907, requiring registration and publication of internal revenue tax receipts, on the ground it infringes section 13 of the Constitution of this state, which guarantees immunity from self-incrimination, it has been decided that the constitutional immunity has not been infringed, and the Legislature, under its police powers, could require the utmost publicity in this respect. State v. Hanson, 16 N. D. 347, 113 N. W. 371. The case of People v. Rosenheimer, 209 N. Y. 115, 102 N. E. 530, 46 L. R. A. (N. S.) 977, Ann. Cas. 1915A, 161, goes even further. The defendant was indicted for violating subdivision 3 of section 290 of the Highway Law, which enacts punishment for not stopping after an accident and make himself known. After approving Ex parte Kneedler, 243 Mo. 632, 147 S. W. 983, 40 L. R. A. (N. S.) 622, Ann. Cas. 1913C, 923, the court says:

"In the opinion of the learned court of Missouri reference is made to statutory enactments, at least partially similar in principle to that before us, the validity of which has either been upheld by the courts or has never been questioned. As to motor vehicles, laws requiring the registry of the

names of their owners and chauffeurs and the display of the numbers of the vehicles, in a conspicuous place thereon for the very purpose of identifying the car and the person operating it have been upheld. People v. Schneider, 139 Mich. 673. See Frankford & P. P. Ry. Co. v. City of Phila., 58 Penn. St. 119; City of St. Louis v. Williams, 235 Mo. 503.

"Physicians are required to report deaths and their causes, druggists the sale of poisons, and failure to comply with these requirements is made a misdemeanor (Penal Law, § 1743; Public Health Law, § 235). Labor Law, § 87, requires a person in charge of any factory to report to the commissioner of labor all deaths, accidents, and injuries and the details thereof. Compliance with statutory regulations may, in the case of the commission of a crime by the person who is required to make the certificate or registry, prove an important factor in leading to his detection, but this is not sufficient to render the legislation invalid."

The Ohio court said 71 Ohio Laws, p. 146, fixing a penalty against railroads for overcharging for transportation, and declaring the allegations of the petition claiming such penalty not denied by answer, shall be taken as true, does not violate article 1, § 10, of the Constitution, which provides that no person in a criminal case shall be compelled to be a witness against himself. Cin. S. & R. Co. v. Cook, 37 Ohio St. 265.

The privilege and immunity of the citizen in his private affairs is carefully safeguarded and distinguished in the above cases. Without such distinction of the rights of the individual in his private unregulated business from his status when engaged in business only by permission of the government and under government regulations, the safety of the nation might be in danger.

Regulation which would not permit the government representatives to ascertain anything about the dealers' business would be no regulation. He might hoard, and withhold from the public and from the government agencies, things necessary for the conduct of the war. He might not only do this, but he might sell the same necessaries to the enemy. It is a very feeble government which, in time of war, can have no supervision over dealers in the sale of necessaries, without which the war could not be safely conducted. Otherwise, the government would need to directly deal in all the necessaries for the conduct of the war and the support of the people. Much private business would then end, and a burden be thrown on the government that might be unbearable.

[2] The defendant also raises a question as to the sufficiency of the indictment. The sufficiency of an indictment is to be tested by ascertaining whether it contains every element of the offense intended to be charged and sufficiently apprises the defendant of what he must meet, and whether, in case other proceedings are taken against him for a similar offense, the record shows with accuracy to what extent he may plead a former acquittal or conviction.

[3] Where a statute fully, directly, and expressly, without any uncertainty or ambiguity, sets forth all the elements of an offense, an indictment is sufficient which charges the offense substantially in the language of the statute. Peters v. U. S., 94 Fed. 837. See also U. S. v. Cook, 17 Wall. 168, 21 L. Ed. 538; Evans v. U. S., 153 U. S. 584,

14 Sup. Ct. 934, 38 L. Ed. 830; Cochan v. U. S., 157 U. S. 286, 15 Sup. Ct. 628, 39 L. Ed. 704.

[4] The indictment, after setting out the act and the fact that defendant was engaged in the business of importing, storing, etc., sugar, alleged that the duly authorized officers of the government demanded an examination of the books; defendant refused to give such agents any information whatsoever, did then and there fail and refuse to allow said agents to inspect the property, place of business, and record of said license, declared said books to be locked in the safe, and he did not take them out. This seemed to be a sufficient compliance, and sufficiently informs the accused of the nature of the charge against him.

The court is indebted to the careful and painstaking brief of counsel, evidencing extensive research of authorities.

The demurrer is overruled. An order may be prepared accordingly.