**PINKUS et al. v. PORTER, Adm'r, OPA.**

**No. 9039.**

Circuit Court of Appeals, Seventh Circuit.

May 2, 1946.

Harry A. Kovenock and Harry J. Weisfeldt, both of Milwaukee, Wis., for appellants.

George Moncharsh, Milton Klein, and David London, OPA, all of Washington, D. C., and Amos J. Coffman, Jacob Cohen, and George E. Leonard, OPA, all of Chicago, Ill., and Samuel Mermin, Chief, Special Litigation Branch, OPA, of Washington, D. C. (Lee K. Beznor, Dist. Enforcement Atty., OPA, of Milwaukee, Wis., of counsel), for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Appellants appeal from an order entered by the District Court, February 18, 1946, directing them to appear at the Milwaukee Office of the Office of Price Administration, on February 25, to testify concerning the purchase and sale of commodities by the Wisconsin Packing Company, and to produce all books and records showing the purchase of livestock since January 1, 1945, and sale of beef from January 1, 1943. Application for the order was made after both appellants had refused to comply with administrative subpœnas requiring the same information. On the return day, as extended at the request of counsel for appellants, counsel appeared without his clients or the records and asked for a three-week adjournment, stating that if appellee would specify the parts of the records desired, he would furnish copies or would stipulate as to their contents.

Appellants first contend that there was no necessity for the subpœnas, there being no showing that the information sought was not available otherwise, and that in the absence of a showing of necessity, the Administrator was not entitled to the order complained of. Section 202(b) of the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 922(b), authorizes the Administrator to require any person engaged in the business of dealing with any commodity to furnish information, keep records, and make reports, and to permit the inspection and copying of records and other documents. It also authorizes him, by subpœna, to require any such person to appear and testify or produce documents at any designated place, "whenever necessary." Appellants construe this to require that the Administrator make a showing of necessity before his request for enforcement is granted by the court, and urge that such requirement was not met by the affidavits which were presented in this case. They rely upon the difference between the language quoted from subsection (b), and that of subsection (a). The latter permits the Administrator to conduct hearings and obtain such information *as he deems necessary*. However, as appellee points out, such difference in language does not necessarily mean a difference in meaning, as held in Colgate-Palmolive-Peet Co. v. United States, 320 U.S. 422, 64 S.Ct. 227, 88 L.Ed. 143. And the effect of making

such a distinction between the subsections here involved would be to give the Administrator less authority over persons dealing in commodities, whose own activities were the subject of the investigation, than over other persons not dealing with such commodities.

 We are convinced that the Administrator was acting within his authority in requiring appellants to appear before him to testify concerning the matters stated, and in calling upon them to bring books and records dealing with transactions within the limited period fixed. They did not appear, but sent their attorney who asked for an itemized list of the books and records desired, and for three weeks in which to prepare for the investigation. Under these circumstances we think there was ample authority for the Administrator to ask for, and the court to issue the subpoenas which, we note, allowed them a full week before compliance. Cf. Fleming v. Montgomery Ward and Co., 7 Cir., 114 F.2d 384.

 Appellants also contend that the subpoenas were invalid because signed and issued by the District Director under a purported delegation of the Administrator not in fact authorized by the Act. The subpoenas were issued in the name of the Administrator and signed with his name, by the District Director, in accordance with the provisions of Order No. 53, as revised May 13, 1944, 9 F.R. 5191.

Appellants base their attack on the validity of the delegation on the ruling in Cudahy Packing Co. of Louisiana v. Holland, 315 U.S. 357, 788, 62 S.Ct. 651, 86 L.Ed. 895. There the Court held that the Administrator of the Wage and Hour Division of the Department of Labor was not authorized by the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., to delegate the power to sign and issue a subpoena duces tecum conferred upon him by that Act. In reaching its decision, from which four Justices dissented, the Court emphasized the fact that a provision of the House bill specifically authorizing any employee designated by the Administrator to subpoena witnesses, and one of the Senate bill lodging the subpoena power in a Labor Standards Board specifically authorized to delegate that power, were stricken from the bill as finally enacted, and in their place, there was inserted a provision granting to the Administrator the subpoena powers of the Federal Trade Commission Act, 15 U. S.C.A. § 41 et seq., which permits that Commission to require the attendance and testimony of witnesses and the production of documents by subpoena which may be signed by any member. In view of this legislative history, the Court construed a provision of the Act that, "The principal office of the Administrator shall be in the District of Columbia, but he *or his duly authorized representative may exercise any or all of his powers in any place,*" (29 U. S.C.A. § 204(c), our italics), to be no more than a definition of the geographical or territorial jurisdiction of the Administrator and his representatives. The Court did not discuss the effect of a further provision of the Act, that "The Administrator may * * * appoint such employees as he deems necessary *to carry out his functions and duties under this chapter * * *"* (29 U.S.C.A. § 204(b), our italics). The Court concluded that the legislative history of the Act demonstrated the Congressional intent not to delegate the subpoena power.

Section 202(a) and (b) of the Price Control Act contains precisely the same language as the two provisions quoted above, hence appellants rely upon the Cudahy case as controlling the decision under the case at bar. We, however, agree with appellee who contends that the legislative history of the Act here involved is so different as to justify the opposite conclusion, that he was permitted to delegate his subpoena power. He calls attention to the language of the Senate Committee on Banking and Currency in reporting out the bill (Sen.Rep. No. 931, 77th Cong., 2d session, pp. 20-21):

"Section 201(a) authorizes the Administrator to hire such employees, utilize and to establish such regional, local, or other agencies, and to accept such voluntary and uncompensated services as he deems to be necessary. He may perform his duties through such employees or agencies by delegating to them any of the powers given to him by the bill. * * *

"Section 201(b) provides that the principal office of the Administrator shall be in the District of Columbia but authorizes the Administrator, or any representative or other agency to whom he may delegate any or all of his powers, to exercise such powers in any place. * '* * "

■ It clearly appears from this language that the bill as enacted was understood to confer upon the Administrator the authority to delegate his powers to the employees or agencies he was authorized to appoint. The same conclusion was reached by the Court of Appeals for the Ninth Circuit as to the authority of the Administrator to delegate his power to institute treble-damage suits under the Act. See Bowles v. Wheeler, 152 F.2d 34, certiorari denied, 66 S.Ct. 265.

■ Appellee also calls attention to the fact that his practice with respect to the issuance of subpœnas was explained to the Special Committee to Investigate Executive Agencies on June 22, 1944, when the Director of the Litigation Division, Enforcement Department of the Office of Price Administration, testified before that committee. Its policy as to decentralization in all its functions was also fully reported to Congress from time to time. See Hearings on Extension of Emergency Price Control Act, 78th Congress, 2d session, Vol. I, pp. 152, 153. The re-enactment of the Act after such administrative construction was made known to Congress constitutes a legislative ratification of that interpretation. Bowles v. Wheeler, supra, and cases there cited. See also Porter v. McCollogh, 9 Cir., 154 F.2d 876; Bowles v. Griffin, 5 Cir., 151 F.2d 458.

■ Appellants also contend that the order disregarded their rights under § 202 (d) which provides that the production of a person's documents at any place other than his place of business shall not be required in any case in which, prior to the return date specified in the subpœna, such person either has furnished the Administrator with a copy of such documents or has entered into a stipulation with him as to the information therein contained. They urge that under this section they are entitled to enough time to make copies or stipulate as to the information required, and that a subpœna returnable the day following its issuance makes it impossible for them to take advantage of this alternative to compliance. We do not agree. The subpœnas were not unreasonably broad, being limited in time and subject matter to approximately a three-year period in the case of the company's sales of beef, and an eighteen-month period in the case of purchases of livestock. We see no reason why further itemization should be required of the Administrator. His inquiry into all transactions involving these activities was fully authorized under the Act, and it was therefore within his power to require all records pertaining thereto. Cf. Oklahoma Press Co. v. Walling, 66 S.Ct. 494.

Order affirmed.